WILLIAM C. CLIFT et al.

*v.*

JAMES FRENCHE.

[Decided July 23d, 1914.]

1. Under *P. L. 1903 p. 432 § 59*, providing that the purchaser of land at a tax sale may give written notice to all persons interested in the land of their right to redeem, and that unless they do so within two years after the sale, if the notice is served more than sixty days before the end of the term, or otherwise within sixty days after the service of the notice, their right of redemption will be barred, and·that, if there shall be no redemption within such term of two years or within the time limited by the notice, the right of redemption shall be barred, to bar the right of redemption the statute must be strictly followed.

2. Where a purchaser of land at a tax sale, after giving notice to all persons interested to redeem within sixty days, pursuant to *P. L. 1903 p. 432 § 59*, on an application by a party interested within such period to redeem, requested a delay beyond the sixty days for the purpose of taking up the matter, and thereby induced such party not to attempt to redeem within the statutory period, the purchaser was estopped, as against such party, from using such notice as the basis of a statutory foreclosure of the right to redeem, and, to avail himself of the statutory remedy, was bound to give a new notice.

3. A suit to redeem from a tax sale proceeds on the assumption that the defendant has or can acquire an absolute title, and the validity of his title under the sale cannot be attacked.

*Messrs. King & Vogt,* for the complainants.

*Mr. Edwin A. Rayner,* for the defendant.

EMERY, V. C.

This is a bill by a mortgagee to redeem lands sold for non-payment of taxes. The lands were sold for thirty years and the purchaser claims that the right of redemption has been cut off by proceedings taken under the "Act for the assessment and collection of taxes." *P. L. 1903 p. 432 ch. 208 § 59.* This section

provides two methods for barring or foreclosing the right of redemption, after the period of redemption (two years after the sale) has expired. The first is by an *ex parte* proceeding entirely within the control of the purchaser, and is by his giving written notice to all persons interested in the land of their right to redeem, and that unless they do so within sixty days after the service of the notice, their right to redeem will be barred. After this time (sixty days) has expired without redemption, the purchaser may annex the notice and affidavit of service to the certificate of sale, together with an affidavit that the sale has not been redeemed, and record and file the same therewith in the office of the county clerk or register. By the statute "the said notice and affidavits and the record thereof shall be presumptive evidence of the service and facts therein stated." Section 56 provides for the recording of the certificate of sale with these notices and affidavits annexed and also that the certificate of sale shall be presumptive evidence in all courts of the title of the purchaser. The second method of barring the right of redemption given by section 59 is by a bill to foreclose, and this method may be taken whether the sixty days' notice has been given or not, and where a bill is filed, the right to redeem continues until barred by the decree of sale of the court of chancery.

As to the expiration of the right to redeem, the fifty-seventh section provides that persons interested

"may redeem the same at any time within two years from the date of sale, or at any time thereafter, until the right to redeem has been cut off in the manner hereinafter set forth,"

by paying the purchase-money, interest, fees and expenses.

Under the first method provided in the fifty-ninth section, this right of redemption would be barred on the failure to redeem within sixty days from the service of the notice to redeem. This method, therefore, is manifestly a strictly *ex parte* statutory method, and if the purchaser proposes in this manner to foreclose the right to redeem, it must be strictly followed.

In the present case, the purchaser received a certificate of sale from the collector of taxes, dated April 3d, 1908, reciting the

sale for taxes on March 23d, 1908, of the lands in question to him for thirty years, for the sum of $24.86. On March 26th, 1910, written notices of this sale, and to redeem the same within sixty days, were served on both complainants Clift and Best. On May 7th, 1910, and within this sixty-day period, Best wrote to Frenche: "If you will send me an assignment of your tax claim on the Scheutz property by Mr. Bellis, I will give you a certified check for the amount," to which Frenche replied by letter of May 11th, 1910:

"Box 125,
"Hoboken, N. J., May 11, '10.

"*Mr. J. Frank Best,*

"Dear Sir—In reply to yours of May 7th I have too much to attend to at present to take up the Scheutse business which would require considerable time, but as I stated to you that you could have your time for redemption extended if necessary I now state specifically that your time to redeem as joint mortgagee of the premises is hereby extended sixty days beyond its fixed expiration, so that there is no need to bother about it at present. I think Mr. Maclear will want some similar accommodation as he does not appear to have his mind made up about redemption. Please acknowledge this letter.

"I am, Dear Sir,

"Yours respectfully,

"James Frenche."

The complainants, relying on this letter, took no further steps to redeem within the sixty days. Subsequently, on July 20th, 1910, and within the sixty-day extension period given, Mr. King, one of the complainants' solicitors, enclosed his firm's check for the amount of taxes, $50.54, the same being figured as nearly as he could from defendant's statement, said by him to have been previously sent them. Defendant, by a letter of July 22d, 1910, to Mr. King, written for him by a Mr. C. Bellis, returned this check, stating that the amount was insufficient, asserting further that he had never sent a statement, and that the amount due would have to be settled by agreement or by the court, as the expenses and the trouble connected with it had been a great deal more than the taxes. He further stated that the right to redeem the property expired May 24th, but he had favored Mr. Best by allowing him some extra time "to continue his negotiations for his own individual interest," and then continues:

"He has had four months and has done nothing and there is nothing can be done now except to leave the tax lease stand. If you want to buy it, which I think you ought to do, let me know."

Mr. King, on July 27th, replied to this letter, addressing it to defendant at Waterloo, New Jersey, that being the post-office address of the defendant's letter to him of July 22d. This letter was returned to Mr. King undelivered, and a letter of Bellis (who had been defendant's agent at Waterloo) to Mr. King, and who received the Frenche letter, stated that a letter from his firm had come to Waterloo for James Frenche, "but cannot be delivered, as he is absent, and I have remailed it to the senders." No address was given. Mr. King's letter of July 27th, 1910, was then remailed by him to Mr. Frenche in a letter addressed to him at Hoboken, on August 1st, at the address given by defendant's own letter of May 11th, stating that the enclosed letter had been sent to him at Waterloo, and returned unopened by Bellis. This letter of Mr. King was also returned to the writer unopened, and with the endorsement "refused." On the following day, August 2d, defendant himself wrote to complainant's solicitors that he had been informed that they had been addressing letters to him which he did not receive, and further, "this is to inform you that as I have no business with you, no letters from you will be received." On the day of writing this letter from Newton, August 2d, 1910, the certificate of tax sale, with the notice to redeem and affidavits of service on complainants and others, were recorded in the clerk's office at Newton, in Sussex county, where the lands lie. From this correspondence, and the evidence given at the hearing in connection with it, I conclude that the defendant, at least as early as July 22d, which was within the time to which he had himself extended the time of redemption, had determined to stand on his strict right of foreclosure under the statute, by reason of the failure to redeem within sixty days from the time of the service of the notice on March 26th. The certificate, with its accompanying notice and affidavits, derive their whole efficacy from this failure to redeem within the sixty days so fixed by the notice. Complainant's equity to be relieved from the effect of this statutory *ex parte* foreclosure of the right to redeem arises from the fact that the defend-

ant, on an application to redeem made within the time limited by the sixty days' notice, himself requested a delay beyond the sixty days for the purpose of taking up the matter, and thereby induced defendant not to attempt to redeem within the statutory period of sixty days. By this conduct he must be considered as in equity to be estopped from setting up, as against the complainants, the right to use this sixty-day notice as the basis of the strict statutory foreclosure. The result of this action on his part was, that as against the complainants, defendant was obliged to give a new sixty-day notice under the statute, if he desired to avail himself of this *ex parte* method of foreclosure. This statutory *ex parte* proceeding affords no method whatever for extending the time originally fixed by the notice, or for the settlement of any equities arising between the parties by reason of their agreements, express or implied, made after serving the notice, to waive or not to proceed on the statutory notice given. By himself leading the complainants to delay beyond the fixed statutory time, defendant is, in my judgment, estopped in equity, under the circumstances of this case, from setting up this failure to redeem under this notice as the basis of his statutory absolute title. And this tax title must therefore be declared subject to redemption. What payments are to be made on redemption will be determined, if the parties fail to agree.

Several other questions were raised on the arguments and briefs, one by the complainant questioning the validity of defendant's title under the sale. As here presented, this question strikes me as purely a question of legal title which could not be decided in this suit. Relief on this bill to redeem proceeds on the assumption that the defendant has, or can, acquire absolute title under the statute.

Another was raised by the defendant questioning complainant's title to the mortgage and setting up title in a third person, a Mr. MacLear. This question has been decided in complainant's favor in a suit to foreclose the mortgage brought against MacLear and others.